Tilghman C. J.
(after stating the case,) delivered the opinion oí the Court, as follows:—
It is very clear, that the agreement entered into by the plaintiff, and his brother Peter, dated 28th February, 1811, was good evidence. The plaintiff could not support his case, without shewing, that he had made a choice of one of the tracts of land, under his father’s will. There were two *258 tracts remaining, and the plaintiff and his brother Peter, were the two sons who had a right to the choice. Peter was the eldest, and had the-first choice. This agreement went directly to the proof of the choice made by each brother, and. was therefore a material part of the plaintiff’s title — of course, it was evidence.- When the evidence was closed, the counsel for the plaintiff requested the opinion of the Court on several points of law, to which answers were given in the charge delivered to the jury, and errors have been assigned in various parts of the charge.
, 1. The defendant’s counsel contended, that the instrument of writing, by which George and Samuel Leman relinquished their right of choice, and consented that-the executors should ■'Sell the land, amounted to a transfer of their interest; but the Court-was of opinion that it had no other operation, than a bare relinquishment. In this opinion, the Court was right. George and Samuel had no interest, which they could convey. They had . only a right of choice, and in case of their not choosing, the right of choice passed to their younger brothers. They might have chosen, and then conveyed to the executors. But this they would not do, because they must have paid the price, at which the lands were appraised. And in fact, there are no words in the writing, which look like a conveyance. It is a naked relinquishment qf the right of choice, and a consent that the executors should sell. This consent would bind themselves, but could have no effect on any-others of the family.
2. The Court were requested to instruct the jury, that the right of choice was not given to all the sons of the testator, but only to the five who were first in order, and that if any of-the five tracts should be refused by them, they should be sold by the executors. I can see nothing in the will which favours such a construction. The intention is clearly expressed, that the sons (that is, all th.e.sons,) should have their choice of the said five pieces of land, regularly in their turn, allow, ing the eldest to have first choice, and so on, till said jive pieces be chosen. The choice is not to stop, till all the tracts 1 are chosen. This is the only limit. No sale is to be made, till every son has rejected the land, and in the mean time,’ it is proyxded, that the executors shall rent the lands. When *259 the youngest son reached the age of twenty-one, the right of choice would be closed. If he refused, the executors were to proceed to a sale.
3. Objections were made to the charge, in several matters of minor importance — Whether an equity arose to the defendants from the improvements made by them, under the eye of the plaintiff, after he came to age: W hether the deed from the executors of DanielLeman to Samuel Le Fevre, was absolutely void, or passed some interest: Whether, in case the plaintiff had a good title, he could recover,' without paying, or tendering the price at which the land was appraised: But the great point, and the only one necessary to be decided is, whether the plaintiff had not lost his right of choice, by postponing it so long; for, if he had, the other questions are immaterial. It was the intention of the testator, to divide his estate equally among his children. He had a large family — his lands were to be divided into convenient parcels, and appraised. He indulged his sons, according to the order of seniority, with their choice ; but they were to pay the appraised value, and the whole was to be equally divided among all the children. This right of choice, which might be suspended, as to some of the tracts, until the youngest son came to age, was attended with great inconvenience, as it prevented a final division of the estate, and therefore it should receive a strict construction. The testator was aware of the inconveniences .that might result from a protracted choice, and therefore directed, that those sons who were minors, and should have a right of choice on coming to age, should make their first payment on their arrival at the age of twenty~one. But, the plaintiff’s counsel, urge, by way of excuse, that the land having been sold by the executor, it would be unreasonable that the plaintiff should be put to his choice, immediately, or to the payment of any money, until he obtained possession of the land. There is something in this apology. Under the circumstances of the case, it might be hard to hold the plaintiff to a day. I should be willing to indulge him in some reasonable time, but the time he has taken, is altogether unreasonable. It was the desire, as well as the interest of the family, that the lands should be converted to money as soon as possible. We see their wishes plainly from the consent which was given to the sale to Le~ *260 fevre. And, in the making of that sale, there is no reason to doubt, the integrity of the executors. Now, how did the plaintiff and his brother Peter act, as to their right of choice? The plaintiff never moved in the business till two or three years after his coming to age ; and then, he contented himself with demanding his land of the executor of the survivor of his father’s executors. Being told that the land was sold, he rested six or seven years, and then began to shew himself in earnest. He and- Peter, (who had been of age fourteen years, without taking any step that we hear of,) came to an agreement, by which each fixed on his tract. By this time, land had risen in price, very considerably, and- they were sure of being great gainers by their choice. Now granting that no consideration is due to the long possession, and the money expended in improvements, by Le Fevre, who purchased a defective title with his eyes open, how does the matter stand with the rest of the family ? What right have these two brothers, John and Peter, after lying by so many years, to reap the whole fruit of this accidéntal rise of market? They should have made an unequivocal, decided, election, so as to bind themselves, in a reasonable time, after coming io age. I should think a year quite sufficient to allow them ; and not' having made their election in that time, the advantage in annulling the sale to Le Fevre, should be the common property of the family. If any of the others have consented to that sale, it will operate in favour of Le Fevre, or those who stand in his place, and is-not to be carried to the credit of the plaintiff. The sale to Le Fevre was certainly without authority, and unless thé plaintiff assented to it, when the executors settled their administration account, and charged themselves with the whole purchase money in the year 1806, I do not see, why he should not recover the share of the land to which he is entitled, as one of his father’s children. ' But, this is very different from recovering the tract which hé elected, by his agreement with his brother Peter. But, the President of the Court of Common Pleas charged the jury, that the plaintiff was. entitled to recover, according to that election. In that, I am of opinion, there was error. The judgment should, therefore, be reversed, anda venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.